**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LOUIS J. AVERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 11 C 7471** |
| **v.** | ) | |
| | ) | **Magistrate Judge Daniel G. Martin** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Louis J. Avery (Avery) seeks review of the final decision of the Commissioner of Social Security denying his claim for supplemental security income (SSI). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. Because the ALJ's decision is not supported by substantial evidence, the denial of benefits is reversed and this case is remanded for further proceedings consistent with this opinion.

**I.      Background**

Avery was born on October 24, 1985 and suffers from mental impairments. (R. 214). At age six, Avery was removed from his home because of abuse and became a ward of the state in foster care. (R. 332). During the administrative hearing, Avery's counsel represented that throughout Avery's childhood, his mother used crack cocaine. (R. 60). Avery also has a history of substance abuse. (R. 371). At age 12, Avery was diagnosed with depressive disorder, not otherwise specified, impulse control disorder and severe psychological and environmental problems after he threatened to kill his foster parents and the other children in the home and to set the building on fire. (R. 332-34). The medical expert hired by the Social Security Administration to testify at the hearing described Avery's childhood as "very traumatic," with several incidents in which he was abused, neglected, and struck out in a hostile fashion. (R. 60).

Avery was expelled from high school in the ninth grade and has no work history. (R. 35, 250). Avery does not have a driver's license and does not use public transportation because he gets lost. (R. 40, 371). At the time of the May 27, 2012 hearing, Avery lived in an apartment with his sister and her three children. (R. 33-34). Avery applied for SSI on April 10, 2007, alleging he became totally disabled on March 29, 2007 because of a learning disability and mental illness. (R. 214-19, 246). Avery's application was denied at the initial and reconsideration levels due to his failure to attend two scheduled consultative psychological evaluations. (R. 84-88, 89-92).

Under the required five-step analysis used to evaluate disability, the ALJ found that Avery had not engaged in substantial gainful activity since the alleged onset date of March 29, 2007 (step one); his borderline intellectual functioning, with polysubstance abuse, a learning disorder, not otherwise specified by history, and antisocial personality disorder were severe impairments (step two); but that they did not qualify as a listed impairment (step three). (R. 21, 23). The ALJ determined that Avery retained the residual functional capacity (RFC) to perform light work except no climbing ladders, ropes, or scaffolds, no work at unprotected heights, no commercial driving, no contact with the general public, minimal contact with supervisors, and no complex or detailed tasks. (R. 23). Avery has no past relevant work (step four). (R. 26). The ALJ concluded there were jobs that exist in significant numbers in the economy that Avery could perform considering his age, education, and residual functional capacity, including office or house cleaner jobs (step five). (R. 26-27).

The Appeals Council denied Avery's request for review on August 25, 2010. (R. 1-5). Avery now seeks judicial review of the final decision of the Commissioner, which is the ALJ's ruling. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

**II.    Discussion**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step sequential inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence, based upon a legal error, or too poorly articulated to permit meaningful review. Hopgood ex rel. v. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In its substantial evidence review, the court critically reviews the entire administrative record but does not reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869. An ALJ's credibility

determination is generally entitled to deference and will not be overturned unless it is patently wrong.  Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Avery's claim at step five, finding that Avery retains the residual functional capacity to perform a range of light work.  Avery raises three main challenges to the ALJ's decision: (1) the ALJ erred at step three in declining to find that his condition met the criteria of Listings 12.05 and 12.08; (2) the ALJ erred in assessing Avery's residual functional capacity; and (3) the ALJ failed to properly evaluate Avery's credibility.  The Court finds that the ALJ's decision is not supported by substantial evidence because it is based on an incomplete RFC determination and an unsound adverse credibility finding.

### A.     Step Three Determination

Avery first challenges the ALJ's adverse step three determination as to Listings 12.05 (mental retardation) and 12.08 (personality disorders).  Under a theory of presumptive disability, a claimant is eligible for benefits at step three if he has a condition that meets or equals an impairment found in the "Listing of Impairments" (listings).  Maggard v. Apfel 167 F.3d 376, 379 (7th Cir. 1999).  The listings specify the criteria for impairments that are considered presumptively disabling.  Id. at 380.  A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing.  Id.  To meet or equal a listed impairment, the claimant must satisfy all the criteria of the listing.  Id.  The claimant bears the burden at step three of proving that his condition meets or equals a listed impairment.  Id.  In making a step three determination, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing."  Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004).

At step three, the ALJ found that Avery does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (R.21).  Listing 12.05(C) requires

a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ considered Avery under Listing 12.05(C) and concluded that he did not meet the criteria. One of the reasons the ALJ offered for finding that Avery did not meet Listing 12.05(C) was the lack of a valid verbal, performance, or full scale IQ score of 60 through 70. (R. 22-23).

Substantial evidence supports the ALJ's finding that Avery's IQ scores were "less than fully valid." (R. 22). Dr. Robert V. Prescott, a psychologist, determined that Avery had a verbal comprehension score of 66, a perceptual reasoning score of 71, a working memory score of 58, a processing speed of 53, and a full-scale score of 54. (R. 373). Dr. Prescott observed that Avery "did not appear to be making his best effort" during testing, noted that Avery's recent substance abuse "may have adversely affected him as well," and pined that it was "likely that the obtained test scores probably underestimate his level of functioning." (R. 373, 375). The ALJ recognized that Avery scored below 70 on the WAIS IV and WRAT IV tests administered by Dr. Prescott, but reasoned that the scores were of "questionable validity" because Dr. Prescott observed that Avery was not making his best effort during the testing and Avery admitted drinking the day before and the day of the consultative evaluation. (R. 22, 371). The ALJ also noted that Avery used marijuana the day before the exam. Id. The medical expert (ME) confirmed that the entire psychological consultative evaluation "was of really questionable validity." (R. 53). The ME testified that both the effects of drug and alcohol use the day before and day of the examination and the lack of acceptable effort "contaminated the results of the cognitive evaluations." Id.[1] The ME found that

_____

[1] In a related argument, Avery contends that the ALJ should have further developed the record by ordering an additional psychological consultative evaluation, especially since Dr. Prescott's report and the ME's testimony cast doubt on the validity of Avery's IQ scores. Avery argues that another consultative psychological evaluation would assess the degree of impairment caused by his mental impairments. The ALJ has a duty to develop a full and fair record. Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). An ALJ may order a consultative examination when "the evidence as a whole is insufficient to support a determination or decision of [the] claim." 20 C.F.R. § 416.919a(b). The need for an additional examination normally involves a question of judgment,

Avery's condition does not meet or medically equal a listed impairment. (R. 56).

The ALJ found that Avery did not meet the requirements of Listing 12.08. (R. 21). This particular listing requires, among other things, that the claimant have marked limitations in at least two of the following: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ considered whether these "paragraph B" criteria of Listing 12.08 were satisfied. (R. 21-22). The ALJ found that Avery has moderate restrictions in activities of daily living because he can take care of his own personal grooming and perform simple tasks. (R. 21). He noted that Avery has a learning disorder and is slow in performing math calculations. Id. The ALJ concluded that Avery has moderate difficulties in social functioning because he had been diagnosed with an anti-social personality disorder and dislikes people. Id. The ALJ noted that Avery has three kids and is able to maintain a relationship with them. Id. With regard to concentration, persistence, or pace, the ALJ found that Avery has moderate difficulties because he has a learning disorder and the consultative examiner noted limitations in concentration during the March 2010 examination. (R. 22). The ALJ also found that Avery has experienced no episodes of decompensation. Id.

As to Listing 12.08, Avery offers a two-sentence argument in his opening memorandum: "The record establishes that Plaintiff meets or equals . . . Section 12.08. In the alternative, the combination of impairments is medically equivalent to the Listings." (Doc. 19 at 7). Avery does not

---

and courts generally defer to the ALJ's determination of whether the record has been adequately developed. Wilcox v. Astrue, 2012 WL 3590894, at *3 (7th Cir. 2012); Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993) (holding that courts "must respect the authority of administrative officials to decide how much is enough" because "one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on."). Because this case is being remanded on other grounds, it is unnecessary to resolve this issue. On remand, the ALJ shall determine whether another consultative mental examination, including IQ and memory testing, would fairly and fully develop the record as to Avery's cognitive functioning. If the ALJ determines that such an examination is unnecessary, the ALJ must adequately explain his decision.

specify how his impairments met or medically equal the criteria of Listing 12.08. In his reply brief,

Avery states that "[t]he ME clearly found that the Plaintiff met the requirements of Section 12.08(A)

and had a marked limitation in his ability to maintain social functioning." (Doc. 25 at 6).

Substantial evidence supports the ALJ's conclusion that Avery's condition does not meet

Listing 12.08(B). The ME found that Avery is moderately impaired in terms of activities of daily

living and concentration, persistence, and pace. (R. 59). As to maintaining social functioning, the

ME opined that overall Avery is moderately impaired but in a threatening situation, he is markedly

impaired. Id. The ME noted no documented episodes of decompensation. Id. The ME opined

that Avery's condition does not meet or medically equal a listed impairment. (R. 56). Avery

focuses his challenge on the ALJ's finding that his limitations in the domain of "social functioning"

were less than marked, but he must meet two criteria under section B to satisfy listing 12.08.

Because there were no evaluations in the record that found more severe impairments with regard

to the other "B criteria" of Listing 12.08 than the ME and the ALJ provided, any error by the ALJ

regarding the social functioning domain would be harmless error that does not change the

outcome. Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (stating "the doctrine of harmless

error . . . is fully applicable to judicial review of administrative decisions.").

## B. RFC Determination

Avery challenges the ALJ's residual functional capacity (RFC) determination on the ground

that it did not sufficiently account for his impaired social functioning. "The RFC is the maximum that

a claimant can still do despite his mental and physical limitations." Craft v. Astrue, 539 F.3d 668,

675-76 (7th Cir. 2008). Social functioning refers to a claimant's "capacity to interact independently,

appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404, Supbt

P, App. 1 § 12.00(C)(2). This includes the ability to "get along with family members, friends,

neighbors, grocery clerks, landlords, and bus drivers." Id. Social functioning in work situations may

involve "interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." Id.

The ALJ found that Avery has moderate difficulties in social functioning. (R. 21). The ALJ stated that Avery has been diagnosed with anti-social personality disorder and he does not like people. Id. The ALJ also noted that Avery has three children and found that he has been able to maintain a relationship with them. Id. The ALJ accounted for Avery's difficulties in social functioning by finding that he cannot work with the general public and is limited to minimal contact with supervisors. (R. 24).

The ALJ's finding of moderate difficulties in social functioning and the RFC determination limiting Avery to minimal contact with supervisors but finding no further limitations based on Avery's difficulties in social functioning are not supported by substantial evidence. At the May 27, 2010 administrative hearing in this case, the ME, after examining the record and hearing the testimony, declared that Avery suffered primarily from behavior problems and an "inability to relate effectively on a social level." (R. 57). The ME explained that the difficulty Avery would have in functioning in a work like setting would be in his association with other people:

> I do not think that he could handle regular contact with the general public. He would have, he would be able to handle routine supervision unless it was overly critical. In other words, if he felt that he was being criticized or not dealt with in a manner of respect that he would explode verbally and the same with co-workers. But in a situation which he has very little contact with fellow employees or with supervisors and not a whole lot of confrontation or criticism from the supervisors or peers he would be able to handle that.

Id. As evidence of Avery's anti-social personality disorder, the ME noted his criminal history which includes several arrests for drug abuse, stealing and firearm possessions. (R. 58). The ME found that Avery is able to act in a socially responsible manner when it is in his best interest. Id. The ME then translated his opinion of Avery's social functioning condition into an RFC assessment of overall moderately impaired in maintaining social functioning and markedly impaired in the area of social functioning when he feels threatened. (R. 59). The ALJ credited the opinion of the ME that

Avery generally has moderate limitations in social functioning but did not mention the ME's other conclusion that Avery is markedly impaired in social functioning in situations where he feels threatened. (R. 21).

The ALJ was required to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible. Outlaw v. Astrue, 412 Fed.Appx. 894, at *4 (7th Cir. 2011). Without any stated exception, the ALJ gave "considerable weight to the medical expert's opinion," finding it "fully informed" and "supported by the longitudinal record." (R. 26). (R. 20). One of the ME's findings regarding Avery's mental limitations was not reflected in the RFC. The ALJ did not include the ME's marked impairment in social functioning when Avery feels threatened in the RFC assessment. The ALJ's RFC determination accounted only for the overall moderate impairment in social functioning found by the ME. With regard to his social limitations, the ALJ limited Avery to "no contact with the general public" and "minimal contact with supervisors." (R. 24). It is not clear why the ALJ accepted the overall moderate restriction in social functioning and disregarded the marked restriction in social functioning in threatening situations. The ME's marked limitation in social functioning in threatening situations is more restrictive than the ALJ's determination that Avery was overall only moderately limited in social functioning and possessed the ability to maintain minimal contact with supervisors. Furthermore, the ALJ did not explain why he failed to incorporate the ME's finding that Avery was markedly impaired in the area of social functioning when he feels threatened into his RFC assessment. Because the ME's finding was more restrictive than the ALJ's RFC assessment, the ALJ was required to explain why he decided not to incorporate that favorable portion of the ME's finding into his RFC finding. O'Connor-Spinner, 627 F.3d at 621; Buckhanon ex rel. J.H. v. Astrue, 2010 WL 292741, at *3 (7th Cir. Jan. 26, 2010) (stating "[a]lthough ALJs need not address every piece of evidence in detail, they must address significant evidence and explain why strong evidence favorable to the claimant is overcome by the other evidence."); Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) (holding

an ALJ may not selectively consider medical reports but must consider all relevant evidence).

The ALJ's failure to incorporate Avery's marked limitation in social functioning in threatening situations into his RFC determination was not harmless. The ME found that Avery could handle work situations in which he has "very little contact with fellow employees or with supervisors and not a whole lot of confrontation or criticism from the supervisors or peers." (R. 57). The Vocational Expert (VE) testified that although office cleaning or housekeeping jobs have little contact with supervisors, those jobs involve accepting supervisor criticism. (R. 66). The VE explained:

> [Supervisors are] going to be checking in on the rooms and making sure that things are done. They're around. Not as much as in a factory setting but they are around, they're going to be checking up and you do have, you've got a lot of rooms done in a certain time. They're going to make sure, they're going to go in there and check and make sure those rooms are done. They may not be in there at the time that you're in the room but they're going to come to you then and say why didn't you get this one done or that one has something has to be done with that. There's going to be negative criticism.

Id. Given the VE's testimony that office cleaning jobs involve negative criticism from supervisors, the Court cannot say that the ALJ's error in omitting Avery's marked impairment in the ability to respond appropriately to criticism in threatening or critical situations in his RFC conclusion was harmless. McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2010) (holding error cannot be deemed harmless unless the Court cannot find "with great confidence" that the result would be the same on remand).

On remand, the ALJ must explain in detail whether he credits the ME's finding of a marked impairment in social functioning in threatening situations. If so, he shall account for this information in an updated RFC and hypothetical. If the ALJ decides not to credit this portion of the ME's opinion, he must give reasons for not doing so. SSR 96-8p (stating "[i]f the"RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

### C.    Credibility Determination

Avery next contends that the ALJ's credibility determination is erroneous.   "The ALJ's credibility determinations are entitled to special deference but the ALJ is still required to 'build an accurate and logical bridge between the evidence and the result.'"   Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010).   ALJs are required to "carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it."   Martinez v. Astrue, 630 F.3d 693, 697 (7th Cir. 2011).   Further, in evaluating a claimant's credibility, the ALJ must comply with SSR 96-7p and articulate the reasons for the credibility determination.   Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003).   SSR 96-7p provides that the ALJ's credibility determination must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."   SSR 96-7p, at *4.   The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."   Id.   It is not sufficient for an ALJ to "make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"   Id.

The ALJ found Avery's allegations regarding his limitations "less than fully credible."  (R. 25).   The ALJ gave the following reasons for his credibility finding: 1) Avery's allegations of hallucinations are less than credible; 2) Avery has not "generally received the type of medical treatments one would expect from a person with his disabilities;" 3) Avery has a history of failing to show up for consultative examinations; 4) Avery failed to put forth his best effort during the 2010 consultative exam; and 5) Avery's demeanor at the administrative hearing was less than entirely candid.  (R. 25-26).   There are serious deficiencies in all but the fourth reason given by the ALJ for discrediting Avery's testimony and symptoms.

The ALJ first pointed to Avery's alleged inconsistent statements regarding his hallucinations when discounting Avery's credibility. (R. 25). The ALJ purported to rely on the ME's testimony in finding that Avery's "allegations of hallucinations are less than credible." Id. The ALJ stated that the ME "indicated that the visual hallucinations also alleged by the claimant are contradicted by the audiological hallucinations he alleged." Id. The ALJ found "these inconsistencies to be very unusual and odd and that they can be used to show or attempt to present something that is not true, that is, nothing else in the file explains the discrepancies." Id. In fact, the ME's testimony states just the opposite. That is, Avery did not allege auditory hallucinations and "the presence of visual hallucinations without any auditory hallucinations" is unusual. (R. 55). The ME explained:

> [W]hen he's describing visual hallucinations he said that he saw, at night, white lights and a little dog. Now these are very unusual findings and visual hallucinations of that nature are almost always considered to be a product of some kind of organic mental disorder. It's not usually associated with any kind of depressive disorder or psychotic disorder. And the presence of visual hallucinations without any auditory hallucinations which he denied then and now is also unusual. The usual is to have auditory hallucinations and visual hallucinations could be mood congruent but it's just a very odd finding and not typical of the diagnoses that he was given.

Id. In any event, the ME appears to have misunderstood the record as indicating that Avery does not experience auditory hallucinations. At the administrative hearing where the ME was present, Avery testified that he has auditory hallucinations. (R. 46-47). The ALJ questioned Avery about hallucinations and the following exchange occurred:

Q.   Mr. Avery do you see or hear things that aren't there?

A.   Yeah.

Q.   What, like what?  See or hear, which one?

A.   See.

Q.   See?  What do you see?

A.      Like ghosts and stuff.

Q.      I can't hear you sir.

A.      Like ghosts.

Q.      Ghosts?  Do you recognize them?

A.      Yeah.

Q.      Who are they sir?

A.      I don't know.  I seen my grandma one time.

Q.      Your grandma?  *Do they ever talk to you?*

A.      *Sometime.*

Q.      *What do they say?  Do they ever tell you to do things?*

A.      *Yeah.*

Q.      *Like what?*

A.      *Go to school.*

Q.      *Do what?  Go to school?*

A.      *Go to school.*

Q.      You want to go back to school and finish up?

A.      Mm-mmm.

Q.      How often?

A.      At night.

Q.      Every night?  You told your doctor that?

A.      Yeah.

(R. 46-48) (emphasis added). Also, on April 12, 2007, Avery reported to the Social Security Administration that he was admitted to Hardgrove Hospital in 1998 because he "was hearing voices and was threatening other people." (R. 248). It was inaccurate for the ME to characterize Avery as suffering from visual hallucinations without any auditory hallucinations.[2] Because the ALJ based this portion of his credibility determination on the ME's inaccurate description of the record, the ALJ's finding that Avery's allegations of hallucinations are inconsistent and less than credible is not supported by substantial evidence.

There are other deficiencies in the ALJ's assessment of Avery's credibility. The ALJ faulted Avery for not receiving the type of medical treatment "one would expect for a person with his disabilities." (R. 25). The ALJ noted that there are "no current records of treatment for [his] antisocial disorder." (R. 24). The ALJ found that Avery's failure to show up for two scheduled consultative psychological examinations undermined his credibility by showing that "his impairments may not be so debilitating as to preclude employment." (R. 25).

An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ." Social Security Ruling 96-7 p. But an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id; Craft, 539 F.3d at 679 (emphasizing that "the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.");

---

[2] It is also puzzling that the ALJ found the alleged "contradictions" between Avery's visual hallucinations and audiological hallucinations "fall more under the aegis of a personality disorder than a schizoaffective disorder," where Avery has in fact been diagnosed with a personality disorder and did not claim to suffer from a schizoaffective disorder. (R. 25).

Moreover, a claimant's failure to attend a consultative examination can support a finding that the claimant is not disabled, but that inference is only proper where the claimant does not have a "good reason" for not attending. 20 C.F.R. § 416.918(a). An ALJ may need to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p. Explanations which may provide insight into the individual's credibility include not seeing a doctor because the individual is "unable to afford treatment and may not have access to free or low-cost medical services." Id.

The ALJ's credibility determination was flawed because he failed to consider any reasons for Avery's lack of mental health treatment or failure to attend the consultative examinations. The record here contains few medical treatment notes, but the ALJ did not question Avery about the lack of medical care before drawing an adverse credibility inference. Nor did the ALJ give Avery an opportunity to explain his reason for failing to attend the two scheduled consultative examinations. The ALJ therefore erred by inferring that Avery's failure to seek treatment or attend consultative examinations shows that his symptoms were less serious than he described. It is also not clear whether Avery's mental limitations, including his learning disability, borderline intellectual functioning and anti-social personality disorder, had any impact on his ability to attend the consultative examinations and seek mental health treatment. See 20 C.F.R. § 416.918 (requiring the ALJ to "consider [a claimant's] physical, mental, educational, and linguistic limitations . . . when determining if you have a good reason for failing to attend a consultative examination."); Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (concluding that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).

In addition, the Court is troubled by the ALJ's conclusory statement that Avery "has not generally received the type of medical treatment one would expect from a person with his disabilities." (R. 25). The ALJ does not indicate what type of treatment one would expert to find for a person who suffers from a disabling mental condition. The ALJ may be correct that a disabling antisocial personality disorder would result in more frequent treatment than Avery received. Without support or authority in the record, however, the ALJ is not qualified to opine that disabling mental limitations would result in more frequent treatment. On remand, there must be some evidence to support the ALJ's opinion that the type of medical treatment Avery received is inconsistent with a mental disability, and the ALJ must include that support in his decision.

The ALJ also cited Avery's responses during the March 9, 2010 psychological evaluation which were "evasive or vague at times" and concluded that Avery "may have been less than entirely candid." (R. 26). The ALJ properly noted that there was evidence that Avery was less than fully cooperative or put forth less than maximal effort during the consultative examination. Id; (R. 373, 375). ALJs may use lack of effort on evaluations of limitations to undercut credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (holding claimant's "efforts to impede accurate testing of her limitations" by a failure to "give maximum or consistent effort" on two physical capacity evaluations supported ALJ's conclusion that claimant was not credible with regard to her limitations and pain).

An ALJ is also allowed to consider physical appearance and demeanor at the administrative hearing as one factor in assessing credibility, but the ALJ must explain how a claimant's testimony or demeanor during the hearing contradicts his claim. Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000), Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005) (holding applicable regulations and cases require "an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible."); Social Security Ruling 96-7p (stating "[t]he reasons for the credibility finding

-16-

must be grounded in the evidence and articulated in the determination or decision."). Here, the ALJ stated that "the claimant may have been less than entirely candid" at the March 2010 consultative exam and found Avery's "demeanor to be largely the same at the [administrative] hearing." (R. 26). The ALJ failed to describe Avery's demeanor or explain what it was about Avery's demeanor at the administrative hearing that led him to conclude that Avery "may have been less than entirely candid." (R. 26). If Avery's demeanor suggested that he "may have been less than entirely candid," the ALJ should have explained how it was at odds with his alleged symptoms and limitations. An explanation in this case is important because it is not clear how Avery's demeanor would establish that he does not suffer from borderline intellectual functioning, a severe learning disorder, and an anti-social personality disorder. Corder v. Halter, 2001 WL 477210, at *11 n.8 (N.D. Ill. May 4, 2001) (holding ALJ was required to explain how the claimant's demeanor during the hearing contradicted his claim where is was not obvious how claimant's "demeanor" would "show he does not suffer from extremely limited reading and math skills, a borderline range of intelligence, lack of concentration and memory problems."). On remand, the ALJ shall specifically explain how Avery's demeanor at the hearing undermined his alleged symptoms and limitations.

For these reasons, the ALJ's credibility determination was patently wrong, and this case must be remanded for a full and fair analysis of Avery's credibility, consistent with relevant regulations, Social Security Rulings, and case law.

### D.    Limitations in Concentration, Persistence or Pace

In the interest of ensuring a comprehension review on remand, one final matter deserves attention. In relation to Avery's mental limitations, the ALJ determined that he is limited to work involving "no contact with the general public; minimal contact with supervisors; and no complex or detailed tasks." (R. 23); see also (R. 24) (stating "[p]ut another way, he is limited to simple, routine tasks"). The ALJ found that Avery has moderate difficulties with regard to concentration,

persistence or pace. (R. 22). Purportedly the restriction to simple, routine tasks accounted for Avery's learning disorder and moderate difficulties in concentration, persistence or pace. Seventh Circuit precedent is clear, however, that an ALJ cannot account for moderate limitations in concentration, persistence, and pace by restricting a claimant to simple, routine tasks. Walters v. Astrue, 2011 WL 5024149, at *5 (7th Cir., October 21, 2011) (holding that an RFC assessment which limited the plaintiff to "routine, repetitive tasks with simple instructions" did not sufficiently account for claimant's poor concentration); Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2010) (holding the ALJ cannot account for "limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public."). Moreover, the ALJ failed to include Avery's moderate deficiencies in concentration, persistence, or pace in the hypothetical given to the VE. "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by the medical evidence in the record. More specifically, the question must account for documented limitations of 'concentration, persistence, or pace.'" Id. at 684; O'Conner-Spinner, 627 at 620-21 (stating "for most cases, the ALJ should refer expressly to limitations in concentration, persistence and pace in the hypothetical to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). On remand, the ALJ shall take care to follow applicable Seventh Circuit's precedent on the precise issue of including Avery's moderate deficiencies in concentration, persistence or pace into the RFC assessment and hypothetical.

## III.    Conclusion

For these reasons, Plaintiff's Motion for Summary Judgment [18] is granted, and the Commissioner's Motion for Summary Judgment [23] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security

Administration for further proceedings consistent with this opinion.  The Clerk is directed to enter judgment in favor of Plaintiff Louis J. Avery and against Defendant Commissioner of Social Security.

**E N T E R:**

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated:  December 19, 2012**